IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH AKIU, JR., | CIV. NO. 23-00020 JAO-RT |
| Plaintiff, | |
| vs. | **ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Joseph Akiu, Jr. ("Plaintiff") appeals Defendant Commissioner of Social Security Kilolo Kijakazi's (the "Commissioner") denial of his application for social security disability benefits.  He asks the Court to reverse the Commissioner's finding that he is not disabled, remand the matter for a new administrative hearing, and for an award of reasonable attorney fees and costs. Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") improperly rejected Plaintiff's testimony, and Dr. Don Matsuura and Advanced

Practice Registered Nurse ("APRN") Naomi Whitaker's medical opinions without legally sufficient reasons.

For the following reasons, the Court REVERSES the Commissioner's decision denying Plaintiff's application for social security disability benefits, and REMANDS for further proceedings consistent with this Order.

## I.   LEGAL STANDARDS

### A.   Standard of Review

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  If the record, considered as a whole, can reasonably

2

support either affirming or reversing the ALJ's decision, the decision must be affirmed.  *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted).

## B.  Eligibility for Disability Benefits

To be eligible for disability insurance benefits, a plaintiff must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a plaintiff is under a disability "if his physical or mental impairment or impairments are of such severity

3

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Only disabilities existing before the date last insured establish entitlement to disability insurance benefits. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; 20 C.F.R. § 404.1520. It is the plaintiff's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the

4

Commissioner in step five to show that the claimant can perform other substantial gainful work."  *Id.* (citation omitted).

## II.   ADMINISTRATIVE PROCEEDINGS

On October 28, 2019, Plaintiff applied for supplemental security income. *See* ECF No. 8-3 at 15.[1]  The Social Security Administration denied his claim on July 7, 2020, and his request for reconsideration on September 14, 2020.  *Id.*

Due to COVID-19, a telephonic hearing was held before the ALJ on November 4, 2021.  *Id.*  All participants attended the hearing by telephone, including Plaintiff who agreed to appear by telephone and confirmed such agreement at the start of the hearing.  *Id.*  On November 24, 2021, the ALJ issued his Decision.  *Id.* at 12.  The ALJ concluded in part that Plaintiff had not been under a disability since October 28, 2019, the date the application was filed.  ECF *Id.* at 23.

Progressing through the five-step sequential evaluation, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful employment since the date Plaintiff filed his application.  *Id.* at 17.  At step two, the ALJ listed the following as Plaintiff's severe impairments:  "history of congestive heart failure; placement of pacemaker in 2000; cardiomegaly; poorly controlled type II diabetes;

---

[1]   Because the administrative record may include multiple different page numbers for the same page, all citations in the Order will refer to the pagination supplied by CM/ECF in the page's header.

bilateral diabetic macular edema and retinopathy; hypertension; intermittent gout; methamphetamines abuse, in recent remission." *Id.* At step three, the ALJ found that those impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* And before considering step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except he could occasionally perform postural activities; he could occasionally climb stairs and ramps; he must avoid excessive cold and excessive heat; he cannot have exposure to excessive fumes, odors, dusts, gases, or poor ventilation; he could not have exposure to hazardous machinery or unprotected heights; he could not climb ladders, ropes, or scaffolds; he could not perform driving.

*Id.* at 18.

During the hearing, the ALJ presented the RFC to the vocational expert, who testified that Plaintiff would be unable to perform past relevant work as actually or generally performed. *Id.* at 22. The ALJ concluded the same at step four of his analysis. *Id.* At step five, however, the ALJ accepted the vocational expert's testimony that based on Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform the requirements of other occupations such as addressor, final assembler, and lens inspector. *Id.* at 23. The ALJ also determined that Plaintiff is capable of making a successful adjustment to those jobs that exist in significant numbers in the national economy. *Id.* Based on that conclusion, the

6

ALJ found Plaintiff not disabled under section 1614(a)(3)(A) of the Social Security Act ("SSA").  *Id*.

## III.    DISCUSSION

Plaintiff challenges the Decision by arguing that the ALJ improperly rejected his testimony and the medical opinions of Dr. Matsuura and APRN Whitaker, all of which were not harmless errors.  *See* ECF No. 13 at 11–31.  At the oral argument on August 23, 2023, *see* ECF No. 19, Plaintiff indicated that the scope of the appeal is limited to Plaintiff's alleged visual impairment and trouble with concentration due to his visual impairment.  The Court will therefore not address any other alleged conditions.

### A.    **Plaintiff's Testimony – Credibility Determination**

Plaintiff asserts that the ALJ did not give specific, clear and convincing reasons to reject his testimony and that the "reasons are based in the ALJ's misunderstanding of the facts in the record."  ECF No. 13 at 19.  As to his visual impairment, Plaintiff offers three reasons as to why the ALJ erred.  First, the ALJ rejected Plaintiff's testimony regarding the severity of his near acuity symptoms by relying on tests and observations based on his distance vision.  *Id*. at 20–21. Second, the ALJ mischaracterized an anecdote involving Plaintiff spending time with his son and hunting dogs to mean that his near acuity difficulties are not as severe as he alleged.  *Id*. at 22.  Third, the ALJ's proffered examples of Plaintiff's

7

vision improving is not sufficient enough to reject his testimony.  *Id*. at 23.  And as to issues with concentration, Plaintiff offers two reasons the ALJ committed harmful error.  First, similar to his earlier argument, the ALJ improperly used Plaintiff's anecdote to demonstrate he has a greater ability to exert himself or focus.  *Id*. at 23–24.  And second, it was improper for the ALJ to rely on Dr. Matsuura's lack of findings to discredit Plaintiff's testimony.  *Id*. 25–26.  For the reasons explained below, the Court agrees that the ALJ did not provide clear, convincing, and specific reasons for discrediting Plaintiff's testimony.

"Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); s*ee Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (internal quotation marks and citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). When the ALJ makes specific findings justifying a decision to disbelieve a plaintiff's testimony, and those findings are supported by substantial evidence in the record, it is not the Court's role to second-guess the ALJ's decision.  *See Fair*, 885 F.2d at 604.

The Ninth Circuit has established a two-part analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which

8

could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote omitted).

Here, the ALJ engaged in this two-part analysis. He acknowledged "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." ECF No. 8-3 at 19. The Decision did not mention or otherwise find evidence of malingering. This satisfies part one. At part two, the ALJ then determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 20. The Court, however, concludes that the ALJ's determination at part two was not supported by specific, clear, and convincing reasons, and addresses each of the ALJ's reasons in turn.

1.      **Visual Impairment**

a.      **Distance Acuity vs. Near Acuity**

According to the ALJ, the "medical evidence does not demonstrate that the claimant would have near acuity issues that would limit him beyond the above [RFC]." ECF No. 8-3 at 20. As support, the ALJ cited to treatment notes by several doctors to demonstrate that Plaintiff's near acuity issues are not as severe, including optometrist Dr. Harvey Yang's finding in 2020 that Plaintiff had vision of at least 20/40 vision bilaterally and ophthalmologist Dr. Eugene Ng's diagnosis in 2021 that Plaintiff had a vision of 20/50 on the right eye and 20/40 on the left. ECF No. 8-3 at 21. But according to Plaintiff, the ALJ collapsed the test results of his distance vision with his near acuity. ECF No. 13 at 20–21. And because the objective tests that measure distance acuity are distinct from those objective tests that measure near acuity, the ALJ committed harmful error when he rejected Plaintiff's near acuity testimony. *Id*. at 21–22. The Court agrees.

The ALJ may use the medical record as a basis for discounting Plaintiff's testimony, but he must point to specific things in the medical records and "describe *how* they contradict the claimant's testimony, and that explanation must be supported by substantial evidence." *Cyndi M.B. v. Kijakazi*, 2023 WL 5004496, at *3 (C.D. Cal. Aug. 4, 2023) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original)). So while the ALJ pointed to specific

10

medical opinions by Drs. Yang and Ng regarding distance vision, he did not connect how those opinions contradict Plaintiff's testimony regarding *near acuity*. *See Patricia v. Kijakazi*, 2022 WL 17760387, at *9 (S.D. Cal. Dec. 19, 2022) ("The problem is that ALJ does not connect any of this objective medical evidence to Plaintiff's symptoms, even generally, and certainly not specifically."). Indeed, in his Answering Brief, the Commissioner concedes that "Dr. Yang's examination and treatment focused on distance vision." ECF No. 17 at 13. And Dr. Ng's assessment suffers the same fate. The Commissioner does not attempt to explain, nor did the ALJ's Decision provide, how Dr. Ng's finding is connected to near acuity.

The Commissioner then attempts to reference a specific treatment note by Dr. Yang regarding Plaintiff's presbyopia, which is the eyes' inability to focus on nearby objects, to support discrediting Plaintiff's testimony. *Id*. at 13. There, Dr. Yang concluded that presbyopia was a minor concern requiring only observation. *Id*. But the Commissioner reads into the record what is not there. While it is true that Dr. Yang's notes indicated "[r]ecommended observation" for Plaintiff's presbyopia diagnosis, at no point does Dr. Yang characterize the condition as "a minor concern." *See id*. As indicated below, Dr. Yang diagnosed Plaintiff with more than just presbyopia. Even assuming that Dr. Yang's notes explicitly claimed presbyopia was an insignificant concern, nothing in the record suggests

that all other eye conditions, and in particular those affecting near acuity, were improving or simply a minor issue.

And finally, the Commissioner claims that even if the ALJ misapplied the results from distance vision tests to show that Plaintiff did not require near acuity RFC limitations, "it is inconsequential because Dr. Yang's eye treatment notes failed to document significant problems with near vision." ECF No. 17 at 13. The Commissioner, however, misstates Dr. Yang's notes. While Dr. Yang does not explicitly mention near acuity, both he and Dr. Ng list several eye conditions that Plaintiff suffers from, and which include symptoms such as near vision loss. *See* ECF Nos. 8-10 at 199–200, 8-11 at 5–17. For example, symptoms of presbyopia include distorted near acuity, nuclear sclerosis causes difficulty with reading, and symptoms of macular edema include blurred vision and difficulty with reading. *See* ECF Nos 8-10 at 200, 8-11 at 16. But more significantly, the simple fact that Dr. Yang does not mention issues with near acuity cannot be considered a clear and convincing reason because an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Ultimately, while an ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995), they may not rely on their "own

unsupported interpretation of the medical evidence." *Peter B. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 301062, at *3 (D. Or. July 28, 2022).  That is because an ALJ is "not qualified to translate the [medical] data into functional limitations and engage in her own exploration and assessment of Plaintiff's impairments." *de Gutierrez v. Saul*, 2020 WL 5701019, at *5 (E.D. Cal. Sept. 24, 2020) (internal quotation marks and citation omitted).  Here, the ALJ committed harmful error when he interpreted the medical evidence regarding distance vision and interpreted it in such a way as to apply to Plaintiff's near acuity.

      **b.**    **Anecdote**

Plaintiff's second argument is that the ALJ mischaracterized an anecdote he shared with James Vigorito, Ph.D., as part of his psychotherapy.  According to the anecdote, which was a "Response to Interventions/Progress Towards Goals and Objectives,"

> [Plaintiff] and son Kaulana spent 'ohana time together last week Saturday, 3/6/21.  According to [Plaintiff], he and Kaulana spent time together out in the mac nut fields while their hunting dogs were sent out ahead of them.  One strength [Plaintiff] mentioned was that he [ ] took the initiative to chat w/ Kaulana about various professional careers, and offered positive affirmations, such as possibly becoming an engineer, police officer, or fire fighter. Waiola, [Plaintiff's] other son who is currently in youth challenge, plans to join the Navy or Air Force.  [Plaintiff] shared that he is proud that Waiola graduates from youth challenge in June because of how far he has come, and that he believes Kaulana will have the tools necessary to be ready to join the military.  In sum, [Plaintiff] shared that what he meant by "I want

13

to get my boy back" means that he will work hard to gain custody of Kaulana.

ECF No. 8-12 at 74.

And based on that anecdote, the ALJ determined that,

[T]he claimant was also able to *track after his hunting dogs* as they got ahead of him and carry on conversations with his children while walking after the dogs. While the claimant would require a limitation against hazards, this evidence does not support significant near acuity difficulties that would require accommodation beyond the above [RFC]. Thus, the claimant is not as limited as alleged and capable of performing at the above [RFC].

ECF No. 8-3 at 21 (emphasis added).

The problem with the Decision's reliance on this anecdote is two-fold: first, Plaintiff made the statement in the context of psychotherapy; and second, the Decision reads too much into the medical record. Plaintiff did not visit Dr. Vigorito for the purpose of diagnosing or treating his vision impairment or more specifically his near acuity. *See* ECF No. 8-12 at 73. Indeed, Plaintiff shared his personal story about spending time with his son in response to questions about his personal goals. *Id.* And at no point did Dr. Vigorito make an assessment or draw a conclusion as to Plaintiff's visual impairment or near acuity based on the anecdote. *See id.*

But according to the ALJ, the Plaintiff's ability to "track after his hunting dogs" is evidence that he does not suffer from near acuity issues. ECF No. 8-3 at

14

21.  Upon closer inspection, however, the record itself says nothing about "tracking after" Plaintiff's dogs.  And even if the record is as the ALJ represents it to be, it is unclear how Plaintiff's so-called ability to track dogs contradicts testimony regarding the severity of his near acuity.  The Court concludes that the ALJ has not sufficiently connected specific parts of the medical evidence to Plaintiff's testimony and any attempts at doing so fail to meet the specific, clear, and convincing standard, and is not supported by substantial evidence.  *See Herrick v. Comm'r of Soc. Sec.*, 2022 WL 1751049, at *9 (E.D. Cal. May 31, 2022) ("The Court finds the ALJ's statements and summary of the Plaintiff's medical history and testimony did not sufficiently connect specific aspects of the testimony and records for the Court to conclude the ALJ's finding of inconsistency with the record is a clear and convincing reason supported by substantial evidence in the record."  (citations omitted)).

### c.    Alleged Improvement

The ALJ attempted to reject Plaintiff's testimony with records of improvement to his vision, but according to Plaintiff, the ALJ failed to explain how the two reports contradict Plaintiff's testimony.  *Id*. at 23.  In the first report, APRN Whitaker wrote that Plaintiff's A1C improved from 10 to 7.9.  ECF No. 8-12 at 91.  APRN Whitaker's assessment, however, was silent as to Plaintiff's vision, including any improvement to his near acuity.  *See id*.  And as explained

above, the ALJ, as a lay person, is not qualified to interpret raw medical data in functional terms. *See de Gutierrez v. Saul*, 2020 WL 5701019, at *5 (E.D. Cal. Sept. 24, 2020). So it was error for the ALJ, without objective evidence, to take APRN Whitaker's assessment and conclude Plaintiff's near acuity improved.

The second report the ALJ relied on, and which Plaintiff challenges, is Dr. Ng's assessment that Plaintiff's vision was only "slightly blurry." ECF No. 8-11 at 33. But that ignores the other parts of Dr. Ng's assessment that report Plaintiff "is here for blurred vision," and that he "states no change to flashes or floaters." *Id*. And like the first report, Dr. Ng's assessment does not actually state that Plaintiff's vision is improving, let alone his near acuity.

The ALJ also makes the improper inference that because Plaintiff "reported that he was feeling 'well' and that his vision was improving," it then meant that his near acuity was also improving. ECF No. 8-3 at 20–21. But that is not specific, clear, nor convincing enough. *See Trevisor*, 871 F.3d at 678. Nor does substantial evidence support this inference because each of Drs. Yang and Ng's reports indicate that Plaintiff suffers from the following vision-related conditions, even after treatment: (1) proliferative diabetic retinopathy; (2) diabetic macular edema; (3) diabetes with ocular complications; (4) nuclear sclerosis; (5) posterior vitreous detachment; (6) optic disc drusen; (7) macular RPE changes; (8) blurred vision; and (9) presbyopia. *See* ECF Nos. 8-10 at 199–200, 8-11 at 5–17. Further, these

16

reports are consistent with APRN Whitaker's February 18, 2021 assessment that, based on Plaintiff's conditions, he has the following limitations: significant bilateral blurred vision, and "cannot safely read, write, [and] follow written directions." ECF No. 8-15 at 10.

Accordingly, the ALJ did not provide specific, clear, and convincing reasons to discount's Plaintiff's testimony as it relates to his near acuity.

### 2.     Concentration

In addition to challenging the ALJ's finding as to near acuity, Plaintiff also argues the ALJ did not provide specific, clear, and convincing reasons to reject his testimony regarding his concentration issues due to poor vision. ECF No. 13 at 24–25. Specifically, the ALJ erred when he relied on the same anecdote involving Plaintiff, his son, and his hunting dogs, and the lack of findings by Dr. Matsuura, to discount Plaintiff's testimony. *Id*. The Court agrees.

The ALJ found that based on the anecdote "the claimant's ability to look after hunting dogs and walk with his children suggest greater ability to exert himself or focus for more than 10 minutes than alleged during the hearing." ECF No. 8-3 at 21. But for the same reasons discussed above, the ALJ erred when he relied on Plaintiff's anecdote as reported by Dr. Vigorito. That is because Dr. Vigorito's note was part of his psychotherapy session with Plaintiff and not for the purposes of diagnosing or analyzing Plaintiff's concentration problems. Indeed,

Dr. Vigorito did not assess Plaintiff's ability to focus nor did he describe the level of exertion or explain the kind of concentration these visits required.

Plaintiff also challenges the ALJ's reliance on the fact that Dr. Matsuura "did not report findings that were consistent" with having issues related to concentration. As discussed earlier and similar to the Court's conclusion as to Dr. Yang, the ALJ also erred when he relied on the absence of findings by Dr. Matsuura. That is because an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

The Court therefore concludes that neither of the ALJ's reasons for discounting Plaintiff's testimony as to concentration meet the specific, clear, and convincing standard, or is supported by substantial evidence.

**B.    Medical Opinions**

Plaintiff argues that the ALJ improperly rejected the medical opinions of Dr. Matsuura and APRN Whitaker without legally sufficient reasons. For reasons set forth below, the Court agrees.

In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Ninth Circuit explained how recent regulatory changes affect the evaluation of medical opinions:

> As a threshold matter, we must decide whether recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an AJ to provide "specific and legitimate" reasons for rejecting an examining

18

> doctor's opinion.  We conclude that they do.  For claims
> subject to the new regulations, the former hierarchy of
> medical opinions—in which we assign presumptive weight
> based on the extent of the doctor's relationship with the
> claimant—no longer applies.  *Now, an ALJ's decision,*
> *including the decision to discredit any medical opinion, must*
> *simply be supported by substantial evidence.*

*Id*. at 787 (emphasis added); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017).

This new regulation utilizes several factors to evaluate the persuasiveness of a

medical opinion: "(1) supportability; (2) consistency; (3) relationship with the

claimant; (4) specialization; and (5) other factors, such as evidence showing a

medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements."

*P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (internal quotation

marks omitted) (quoting 20 C.F.R. §§ 404.1520c, 416.920c(a), (c)(1)–(5), §

416.920c(a), (c)(1)–(5)).  Of these, supportability and consistency are the most

important considerations.  *See Woods*, 32 F.4th at 791.

   "Supportability" is defined as the "extent to which a medical source supports

the medical opinion by explaining the relevant objective medical evidence."  *Id*. at

791–92 (internal quotation marks and citation omitted).  "Consistency" is whether

"the medical opinion is consistent with the evidence from other medical sources

and nonmedical sources in the claim."  *Id*. at 791–92 (internal quotation marks and

citation omitted).  When analyzing these factors, the ALJ must consider

19

supportability and consistency, but may "explain how he considered factors three, four, and five." *Paul H. v. Kijakazi*, 2023 WL 5420232, at *4 (N.D. Cal. Aug. 22, 2023) (citing *Wood*s, 32 F.4th at 792). The ALJ cannot reject a "doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (internal quotation marks omitted) (citing *Woods*, 32 F.4th at 792).

**1.     Dr. Matsuura**

Plaintiff argues that the ALJ committed reversible error when (1) he failed to properly consider the supportability factor and (2) as to the consistency factor, he offered explanations not supported by substantial evidence. The Court agrees.

The ALJ addressed the supportability of Dr. Matsuura's medical opinion as follows:

> In August 2020, Dr. Matsuura indicated that the claimant would be incapable of engaging in competitive work, including a limitation of missing work more than three times a month (Exhibit B23F/2-4). Similarly, in January 2021, Dr. Matsuura again indicated that the claimant would be incapable of engaging in competitive work, including a limitation of missing work more than three times a month (Exhibit B24F/2-4). *Regardless, these opinions are not well supported.*

ECF No. 8-3 at 22 (emphasis added).

Here, the ALJ concluded that Dr. Matsuura's "opinions are not well supported" without any discussion or even reference to the medical record. *Id.* But "[u]nder the revised regulations, district courts often remand matters where an ALJ fails to adequately engage in the supportability analysis." *Howard v. Kijakazi*, 2023 WL 6141372, at *7 (D. Haw. Sept. 20, 2023). So because the ALJ failed to "explain how [he] considered the supportability and consistency factors in reaching these findings," *Woods*, 32 F.4th at 792, his assessment of Dr. Matsuura's medical opinion was insufficient and therefore not supported by substantial evidence. *See Dalton v. Kijakazi*, 2023 WL 2480806, at *6 (E.D. Cal. Mar. 13, 2023) ("The court agrees with plaintiff that the ALJ did not properly address supportability in full consideration of the record, as she was required to do.").

As to the next factor, consistency, the ALJ concluded the following about Dr. Matsuura's medical opinion:

> These opinions are also inconsistent with the overall record. In fact, these opinions are inconsistent with Dr. Matsuura's evaluation of the claimant. In May 2021, Dr. Matsuura reported that the claimant had an ejection fraction of 45% and had no signs of chest pain or shortness of breath (Exhibit B20F/1). Dr. Matsuura recommended that the claimant did not need further evaluation for the next 12 months, indicating stable and controlled symptoms (Exhibit B20F/2). As stated above, the claimant was also able to track after his hunting dogs as they got ahead of him while also talking to his children, indicating no shortness of breath or weakness (Exhibit B22F/73). For these reasons, Dr. Matsuura's opinions are not persuasive.

ECF No. 8-3 at 22.

21

Plaintiff challenges the ALJ's conclusion that he does not suffer from "shortness of breath or weakness" based on the anecdote with his son and dogs. *Id.* at 21. As explained above, the anecdote is not related to Plaintiff's near acuity or concentration problems and cannot be used to form the basis to discredit Dr. Matsuura's testimony. Without more, i.e., explaining *how* a cited source like the anecdote is inconsistent, the ALJ failed to show his work. *See Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *4 (E.D. Cal. Sept. 13, 2022) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source." (quoting *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

The other two consistency findings the ALJ offered are also not supported by substantial evidence. First, according to the ALJ, Dr. Matsuura's evaluation of Plaintiff is inconsistent with his finding that Plaintiff "had an ejection fraction of 45% and had no signs of chest pain or shortness of breath." ECF No. 8-3 at 22. But it is unclear how that finding, which is specific to Plaintiff's cardiac symptoms, is somehow connected to or affects Plaintiff's near acuity. And while Plaintiff testified that his concentration problems are the result of two separate causes—cardiac conditions and vision impairment—the ALJ's consistency finding only relates to Plaintiff's heart and not the "black" and "flashy spots" in his vision

22

that affects his focus.  *Compare* ECF No. 13-2 at 46; AR at 46 ("Q: Do you ever have problems concentrating on what you're doing? A: Yeah, after a heart attack— after my heart attack I have—I mean, it's hard to concentrate.") *with* ECF No. 13-2 at 42–43; AR at 42–43 ("Q: Do [the black and flashy spots] distract you from trying to do what you're doing? A: Yes, it distracts me.").

As to the next consistency finding, the ALJ concluded that Dr. Matsuura recommended that Plaintiff did not need further evaluation for the next year, which is evidence of "stable and controlled symptoms."  ECF No. 8-3 at 22.  But the ALJ appears to conflate the findings by Dr. Matsuura, a cardiovascular doctor, with those from Dr. Yang, an optometrist, and Dr. Ng, an ophthalmologist.  As the medical record indicates, Dr. Matsuura's notes are limited to his specialty and are not based on the numerous eye conditions outlined by Drs. Yang and Ng. Furthermore, the ALJ again misreads the record.  Dr. Matsuura's notes regarding a follow up with Plaintiff after one year were not because his symptoms were "stable and controlled," or even about Plaintiff's near acuity or concentration problems, but about checking up on Plaintiff's defibrillator.  *See* ECF No. 8-11 at 19; AR at 857.

Accordingly, the ALJ committed legal error in improperly rejecting Dr. Matsuura's medical opinion.

**2.    APRN Whitaker**

23

As to APRN Whitaker's opinion that Plaintiff is unable to concentrate greater than 20% of the time, the ALJ concluded that "opinion is not well supported." ECF No. 8-3 at 21. The ALJ relied on the exact same reasons he discredited Dr. Matsuura's opinion to find APRN Whitaker's opinion also not persuasive:

> [I]n May 2021, Dr. Matsuura reported that the claimant had an ejection fraction of 45% and had no signs of chest pain or shortness of breath (Exhibit B20F/1). Dr. Matsuura recommended that the claimant did not need further evaluation for the next 12 months, indicating stable and controlled symptoms (Exhibit B20F/2). As stated above, the claimant was also able to track after his hunting dogs as they got ahead of him while also talking to his children, indicating no shortness of breath or weakness (Exhibit B22F/73). For these reasons, Ms. Whitaker's opinion is not persuasive.

ECF No. 8-3 at 22.

For the same reasons the Court takes issue with the ALJ's treatment of Dr. Matsuura's opinion, the Court also concludes the ALJ erred in his assessment of APRN Whitaker's opinion. In sum, the ALJ did not properly address the supportability factor, and instead found in a conclusory fashion that "[t]his opinion is not well supported." *Id*. And as to the consistency factor, the ALJ failed to explain in detail his rationale and how his stated reasons connect to Plaintiff's near acuity or concentration problems due to vision impairment. Simply put, the ALJ failed to sufficiently support his conclusion. *See Sam-Chankhiao*, 2022 WL 4226170, at *4.

24

Accordingly, the ALJ committed legal error in improperly rejecting APRN Whitaker's medical opinion.

## C.   Harmless Error

The ALJ improperly discredited Plaintiff's testimony and the opinions of Dr. Matsuura and APRN Whitaker, either by reading into the record what wasn't there or misinterpreting the record.  The Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Reynoldson v. Comm'r of Soc. Sec.*, 2023 WL 128969, at *6 (W.D. Wash. Jan. 9, 2023) (citing *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)).  And so, because these errors ultimately affected the ALJ's finding that Plaintiff is not disabled, they are not harmless and require reversal.  *See Treichler*, 775 F.3d at 1099; *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An error is not harmless if it was not "inconsequential to the ultimate nondisability determination.").

## IV.   CONCLUSION

For the following reasons, the Court REVERSES the Commissioner's decision denying Plaintiff's application for social security disability benefits, and REMANDS for further proceedings consistent with this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 28, 2023.



Jill A. Otake
United States District Judge

---

CIV. NO. 23-00020 JAO-RT; *Akiu Jr.  v. Kijakazi*; Order Reversing the Decision of the Commissioner of Social Security.